Jordanna Thigpen (SBN 232642)
**THIGPEN LEGAL, P.C.**
9595 Wilshire Boulevard, Ste. 961
Beverly Hills, CA 90212
Telephone:   (310) 210-7491
Facsimile:   (310) 362-0456
Email: jt@thigpenlegal.com

Roger Y. Muse (SBN 147120)
roger@excelsior-law.com
John Matheny (SBN 149532)
John@excelsior-law.com
**EXCELSIOR LAW**
9595 Wilshire Blvd. Suite 900
Beverly Hills, CA 90212
Telephone:   (310) 205-3981
Facsimile:   (310) 205-0594

*Attorneys for Plaintiff Caley-Rae Pavillard*
[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEY-RAE PAVILLLARD, an individual,<br>          Plaintiff,<br>          vs.<br><br>IGNITE INTERNATIONAL, LTD., a Wyoming limited company; and DOES 1-25, inclusive.<br>          Defendants.<br><hr>IGNITE INTERNATIONAL, LTD., a Wyoming limited liability company,<br><br>          Third-Party Plaintiff,<br>          v.<br>JOSH RYAN, an individual d/b/a JOSH RYAN PHOTOGRAPHY; LA MODELS, INC. and ROES 1-10, inclusive,<br><br>          Third-Party Defendants. | **Case No.**: 2:21-cv-01306-RGK-E [Los Angeles County Case No. 20STCV37942]<br><br>**PLAINTIFF PAVILLARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Date:** February 15, 2022<br>**Time:** 9:00 AM<br>**Judge:** Hon. R. Gary Klausner<br>**Trial Date:** February 15, 2022<br>**Discovery Cutoff:** November 16, 2021 |

## <u>TABLE OF CONTENTS</u>

I.   **<u>PLAINTIFF'S CLAIM</u>**………………………………………………5

   A. **Summary of Claim Plaintiff Plans to Pursue**………………………5

   B. **Elements of Plaintiff's Claim and Evidence in Support**……………5

      1.  **Elements**……………………………………………………5

      2.  **Key Evidence and Argument in Support**……………………6

II.  **<u>IGNITE'S DEFENSES AND RELATED THIRD PARTY</u>**
     **<u>COMPLAINT AGAINST JOSH RYAN</u>**……………………………6

   A. **<u>Ignite's Denial of Pavillard's Claims</u>**……………………………6

      1.  **Elements**……………………………………………………7

      2.  **Key Evidence and Argument in Opposition**………………8

   B. **<u>Elements Required to Establish Ignite's Affirmative Defenses and</u>**
      **<u>Pavillard's Evidence in Rebuttal</u>**…………………………………12

      1.  **Defendant's First "Affirmative Defense" for "Failure to State a**
          **Claim" Is Not a Cognizable Affirmative Defense**……………12

      2.  **Second and Third Affirmative Defenses: Harm Caused by Third-**
          **Parties Over Whom Ignite Had No Control; Fifth and Eleventh**
          **Affirmative Defenses: Failure to Name Necessary and/or**
          **Indispensable Parties**………………………………………12

         a.   **Elements**……………………………………...……12

         b.   **Key Evidence and Argument in Opposition**……………12

      3.  **Fourth Affirmative Defense - Statute of Limitations** …………13

      4.  **Sixth Affirmative Defense – Mitigation** ………………………13

      5.  **Seventh Affirmative Defense – Lack of Standing/Jurisdiction** 13

      6.  **Eighth Affirmative Defense – No Attorneys' Fees**……………14

      7.  **Ninth Affirmative Defense – Lack of Consideration**…………14

         a.   **Elements**……………………………………………14

1

        b.     **Key Evidence and Arguments in Opposition**............15

    8.    **Tenth Affirmative Defense – Defendant is Not the Real Party in Interest**.................................................................15

        a.     **Elements**.............................................................15

        b.     **Key Evidence and Arguments in Opposition**...............15

    9.    **Twelfth Affirmative Defense – No Privity of Contract Between Plaintiff and Defendant**................................................15

        a.     **Elements**..............................................................15

        b.     **Key Evidence and Arguments in Opposition**...............15

    10.   **Thirteenth Affirmative Defense – Reservation of Additional Defenses**............................................................16

    11.   **Fourteenth Affirmative Defense – Denial of All Claims**........16

    12.   **Fifteenth Affirmative Defense – Request for Attorneys' Fees.**16

    13.   **Sixteenth Affirmative Defense – Incorporation by Reference to "All Affirmative Defenses Set forth in FRCP 8 and 12"**..........16

  C.  <u>**Additional Issues Anticipated**</u>.......................................16

    1.    **"Prior Performance of Accord"**....................................16

    2.    **"Good Faith Dispute" Defense**.....................................17

**III.   ANTICIPATED EVIDENTIARY ISSUES**.................................18

**IV.   ANTICIPATED ISSUES OF LAW**.......................................19

**V.    JURY TRIAL**..................................................................20

**A. Issues Triable to the Jury**.................................................20

**B. Issues Triable to the Court**...............................................20

**VI.   ATTORNEYS' FEES**.......................................................20

**VII.  ABANDONMENT OF ISSUES**..........................................21

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

# <u>TABLE OF AUTHORITIES</u>

2

3
**Page(s)**

4
**Cases**

5
*Bliss v. California Cooperative Producers*,

6
    30 Cal.2d 240 (1947) ........................................................................ 14

7
*Boswell v. Reid*,
    199 Cal.App.2d 705 (1962) ............................................................ 14

8
*Castaneda v. Ensign Group, Inc.*,

9
    229 Cal.App.4th 1015 (2014) ........................................................ 19

*Dynamex Operations West, Inc. v. Superior Court of Los Angeles*

10
    4 Cal.5th 903 (2018) ........................................................................ 7

11
*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*
    188 F.Supp.3d 986, 1002 (E.D.Cal. 2016) .................................... 17

12
*Kirby v. Immoos Fire Protection, Inc.*,
    53 Cal.4th 1244 (2012) .................................................................. 13

13
*Pineda v. Bank of Am., N.A.*,

14
    50 Cal. 4th 1389 (2010) ................................................................ 12

15
*Reid v. Overland Machined Products*,
    55 Cal.2d 203 (1961) ...................................................................... 16

16
*Ross v. Morgan Stanley Smith Barney, LLC*,
    2013 WL 1344831 (C.D. Cal. 2013) ............................................ 12

17
*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*

18
    48 Cal.3d 341 (1989) .....................................................................

19
*Taliaferro v. Davis*,
    216 Cal.App.2d 398 (1963) ............................................................ 14

20
*Vogel v. Huntington Oaks Del. Partners, LLC*,
    291 F.R.D. 438 (C.D. Cal. 2013) .................................................. 11

21

22
**Statutes**

23
Labor Code § 201 .............................................................................. 5

24
Labor Code § 203 ......................................................................... 6, 13

Labor Code § 206.5 .......................................................................... 17

25
Labor Code § 218.5 ............................................................................ 6

26
Labor Code § 218.5 .......................................................................... 20

Labor Code § 219 ............................................................................. 12

27
Labor Code § 3557 ............................................................................. 7

28
Labor Code § 5705 ............................................................................. 7

3

1
2

**Rules**

3   Fed.R.Civ.P. 8 ........................................................................................... 16
    Fed.R.Civ.P. 12 ......................................................................................... 16
4   Local Rule 16-4 ........................................................................................... 5
5
6

**Other Authorities**

7   Restatement (Second) of Contracts § 237 (1981) ....................................... 14
    Uniform Commercial Code § 3-408 ......................................................... 14
8   CACI No. 2704 ............................................................................................ 6
9   CACI No. 2705 .......................................................................................... 18
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

1    Pursuant to Local Rule 16-4 and the Court's Order for Jury Trial (DE#46),

2    Plaintiff Caley-Rae Pavillard ("Plaintiff" or "Pavillard") submits the following

3    Memorandum of Contentions of Fact and Law.

4    **I.     <u>PLAINTIFF'S CLAIM</u>**

5        **A. Summary of Claim Plaintiff Plans to Pursue**

6        **<u>Claim 1</u>:** Late-Wage Payment Penalties for October 5, 2018 Employment:

7    Ignite violated Labor Code § 201 when it failed to pay Plaintiff her wages of $3,000

8    for more than 30 days after discharging her from employment on October 5, 2018.

9        Plaintiff Pavillard will prove at trial that she was employed by Defendant Ignite

10   International, Ltd. ("Ignite") as a model for a photography shoot on October 5, 2018,

11   and that Ignite willfully failed to pay her wages when they were due – waiting until

12   May 2020 (nearly two years after her employment ended), and ignoring Pavillard's

13   repeated demands for her payment. Because Ignite failed to timely pay Pavillard's

14   wages pursuant to Labor Code § 201, it is liable for penalties at the rate set forth in

15   Labor Code § 203.

16       Ignite removed Pavillard's initial complaint in Los Angeles State Court based

17   on diversity jurisdiction.  Ignite thereafter filed a third-party complaint against

18   Pavillard's talent agency, LA Models, and the photographer at the shoot, Josh Ryan

19   Photography ("Josh Ryan"), who was also hired by Ignite. Ignite contends that Josh

20   Ryan and LA Models were Pavillard's employers, and Ignite was not. Pavillard does

21   not agree that Josh Ryan was her employer.

22       The Court granted LA Models' motion to dismiss. Dkt. 48.

23       Plaintiff's complaint states a single claim against Defendant Ignite

24   International, Ltd. for waiting time penalties pursuant to Labor Code § 203.

25       **B. Elements of Plaintiff's Claim and Evidence in Support**

26         **1. Elements**

27   In relevant part, Labor Code § 201 provides that "(a) If an employer discharges

28                                    5

an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Labor Code § 203 provides "(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 ..., any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Thus, the elements of Plaintiff's single claim for waiting time penalties are:

1. Plaintiff's employment with Ignite ended;

2. Ignite failed to pay all her wages when due;

3. Ignite willfully failed to pay these wages,

*See* CACI No. 2704 (Damages -Waiting Time Penalty for Nonpayment of Wages (Lab. Code §§ 203, 218). As set forth in CACI No. 2704, "'willfully' means only that the employer intentionally failed or refused to pay the wages. It does not imply a need for any additional bad motive," even though one could easily be inferred from the facts of this case.

A presumption of employment status applies under the Labor Code. It will be Ignite's burden to demonstrate that it was not her employer, and/or that Josh Ryan was her employer.

### 2. Key Evidence and Argument in Support

As set forth below, Pavillard will prove all elements of her claim: she was employed and discharged by Ignite on the same day, October 5, 2018; Ignite did not pay her on October 5, 2018 when the wages were due, and did not pay her at all until May 22, 2020; and Ignite intentionally failed and refused to pay the wages when they were due.

## II. <u>IGNITE'S DEFENSES AND RELATED THIRD PARTY COMPLAINT AGAINST JOSH RYAN</u>

### A. <u>Ignite's Denial of Pavillard's Claims</u>

**1. Elements**

Ignite's main defense is that Pavillard was an independent contractor. In *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), the California Supreme Court explained that "[o]ne seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees." *Borello,* 48 Cal.3d at p. 349 (citing Labor Code §§ 3557, 5705, which provide statutory presumptions of employment status in worker's compensation context). As the California Supreme Court has recognized, courts have routinely extended the presumptions to other contexts. *See Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal.5th 903, 957 fn.4 (2018) ("[T]he rule that a hiring entity has the burden of establishing that a worker is an independent contractor rather than an employee has long been applied in California decisions outside the workers' compensation context.") Accordingly, it is Ignite's burden to prove that Pavillard is an independent contractor.

Ignite will not meet that burden. Based on the facts set forth below, Pavillard was Ignite's employee for purposes of Labor Code § 201.

Ignite also claims that LA Models and Josh Ryan – but not Ignite – were Pavillard's employer(s). The Court has already dismissed LA Models from the lawsuit and found that as a matter of law, LA Models was not Pavillard's employer. Dkt. 48. Ignite will not be able to prove that Josh Ryan was Pavillard's employer.

There are two possibly applicable tests to evaluate Ignite's claim that Pavillard was an independent contractor and/or was Josh Ryan's employee: the so-called ABC Test, taken from the California Supreme Court's holding in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal.5th 903 (2018), later codified in Labor Code § 2775, and now memorialized in CACI No. 2705, and the nine-factor test set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989). Both tests emphasize the "control" factor as the most significant. As set forth below, Pavillard establishes an employment relationship with Ignite under

either test.

As to the ABC Test, which Pavillard contends is the correct test, Ignite must prove all of the following:

    a. That Pavillard is, under the terms of the contract, and in fact free from the control and direction of Ignite in connection with the performance of the work that Pavillard was hired to do;

    b. That Pavillard performs work for Ignite that is outside the usual course of Ignite's business; and

    c. That Pavillard is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed for Ignite.

## 2. Key Evidence and Argument in Opposition

Based on the following facts, which Pavillard will demonstrate with party, witness, and documentary evidence, Pavillard will easily refute Ignite's claim that she was its independent contractor or Josh Ryan's employee. As to the ABC Test, which Pavillard contends is the correct test, Pavillard will show:

1. She was not free from the control and direction of Ignite in connection with the performance of her work, both under the contract for the performance of the work and in fact;

2. She did not perform work that is outside Ignite's usual course of business, which includes marketing its products using live human beings;

Pavillard will provide party and witness testimony and documentary evidence refuting any argument from Ignite that she was an independent contractor and thus not its employee, and concerning at least the following facts.

On or about September 2018, Josh Ryan was hired by Ignite to photograph an advertising campaign to create brand awareness for Ignite for a launch of its products in retail stores. Initial discussions between Josh Ryan and Ignite personnel and Ignite's founder, Director, and then-CEO Dan Bilzerian ("Bilzerian") involved shooting the

1  campaign at Bilzerian's rented Bel Air mansion, known as the "Ignite House."
2  However, because Ignite personnel did not complete the pre-production tasks in time,
3  that concept was scuttled; Ignite decided to proceed with a shoot at a rented studio
4  instead. Bilzerian made it clear that he – and he alone – would have decision-making
5  rights for the hiring of the models to be featured in the campaign. Josh Ryan informed
6  Pavillard and a couple other models that he knew about the opportunity, and asked
7  them to attend a casting call that Bilzerian and other Ignite personnel set up at the
8  "Ignite House," so that Ignite personnel (including Bilzerian) could consider hiring
9  them. Pavillard attend the casting call and Ignite decided to hire her. Ignite set her rate
10  of pay ($2500 plus 20% for an agency fee), set the day and start time for the shoot,
11  and instructed Josh Ryan to inform Pavillard that she was hired for that day and time.

12  Because she had previously hired LA Models, Inc. to serve as her modeling
13  agency, Pavillard explained that her payment would have to go through LA Models
14  (even though LA Models had not obtained the position for her).

15  On October 5, 2018, Pavillard came to the set as directed. Two other models
16  were also hired. Once present, she worked at the direction of Ignite's on-set producer,
17  Jonathan Anastas, for most of the day. Ignite had also hired a "behind the scenes"
18  camera crew to obtain footage of the shoot, which Ignite intended to use for its social
19  media and/or for its own purposes. Pavillard was directed by Ignite personnel to
20  participate in an interview with the "behind the scenes" crew and to permit them to
21  film and photograph her throughout the day, even when Josh Ryan was not
22  photographing her for the advertising campaign. Individuals hired by Ignite provided
23  all of the wardrobe, makeup, tools, and props (including live baby goats) that were
24  necessary; Pavillard did not provide any. Pavillard was not free to come and go from
25  the set and understood she had to stay until the shoot was finished.

26  In the early afternoon, Dan Bilzerian arrived on set. As soon as he arrived,
27  Bilzerian began directing people in the performance of their work, including Pavillard
28  and Josh Ryan. Bilzerian viewed the photographs that Josh Ryan had taken earlier in

9

the day at Ignite's personnel's direction and decided he wanted "a different direction." He directed Josh Ryan to photograph him (1) solo and (2) with Pavillard and the other models. He also made direction about poses and wardrobe for Pavillard and the other models. Finally, the shoot was complete and Pavillard was told she was free to go for the day.

Pavillard was not paid on the day of her discharge. She was not paid within the first thirty days of her discharge. Instead, Ignite took nearly **two years** to pay her wages.

Initially, Pavillard's only point of contact for the employment was Josh Ryan. She contacted Josh Ryan to ask him about payment, and he in turn contacted Ignite personnel. After initial contact went to incorrect and terminated email addresses, eventually, in April 2019, an attorney hired by LA Models was able to reach Ignite personnel and its attorneys. In May 2019, Bilzerian contacted Josh Ryan to assure him Ignite would pay Pavillard. Bilzerian also reached out to Pavillard personally on the Instagram social media platform to inform her she would be paid.

However, no payment was made in 2019, just as no payment had been made in 2018. Acting through an attorney hired by LA Models to represent her, Pavillard continued to demand payment.

Ultimately, in May 2020, after extensive back and forth, telephone calls, and correspondence, and with the original wages still due and owing, Ignite offered to immediately pay $7,500 to Pavillard if she would not file a lawsuit. On May 22, 2020 – nearly two years after Pavillard's discharge from her employment – Ignite paid $3,000 to LA Models via wire transfer. No further payment was ever made to Pavillard or otherwise. On July 24, 2020, Pavillard filed this lawsuit in Los Angeles Superior Court.

Within a week of the Photo Shoot, Ignite began to use the images from the shoot on its social media. Within a couple of months, it had plastered the City with the images – including massive billboards in downtown Los Angeles, on the Sunset

10

Strip marquee, and in Las Vegas. Thus, even as Pavillard was attempting for years to collect her wages, Ignite was spending hundreds of thousands of dollars on media buys in 2018 and 2019, using the fruits of Pavillard's services to advertise its brand.

Pavillard will also provide party and witness testimony and documentary evidence refuting any argument from Ignite that she was an independent contractor under the applicable primary and secondary *Borello* factors, should the Court determine that the ABC Test is not applicable.

Pavillard will demonstrate that Ignite controlled the manner and means of accomplishing the desired result of her work. She will demonstrate that the use of live human models for marketing purposes is an integral part of Ignite's business. She will demonstrate that Ignite supplied the equipment, tools, and paid for the place for her to do her work at the Photo Shoot. She will demonstrate that she has had no investment in the equipment and materials used to do the work. She will demonstrate that her occupation is typically done under the direction of the producer and brand hiring her for an advertising campaign (and was done, in this case). She will demonstrate that she did not have the opportunity for profit and loss as a result of the work she performed for Ignite. She will demonstrate that there was not an extensive amount of skill involved in the work she performed for Ignite.

On the facts of this case, Josh Ryan is clearly not Pavillard's employer, as testimony from both Pavillard and Josh Ryan will establish, and as the documentary evidence also will show. Ignite personnel controlled and directed the Photo Shoot. Ignite set Pavillard's rate of pay, hired her, and had the power to terminate her. Josh Ryan – who was separately hired by – served in his own capacity as a photographer and conveyed information to Pavillard at Ignite's direction. He was never responsible for payment to Pavillard, did not set her rate of pay, did not hire her, and did not have the power to terminate her.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**B. <u>Elements Required to Establish Ignite's Affirmative Defenses and Pavillard's Evidence in Rebuttal</u>**

**1. Defendant's First "Affirmative Defense" for "Failure to State a Claim" Is Not a Cognizable Affirmative Defense**

"[F]ailure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim and not an additional set of facts that would bar recovery notwithstanding the plaintiff's valid prima facie case." *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013). "This allegation asserts a defect in [plaintiff's] case and should properly be brought as a motion to dismiss." *Ross v. Morgan Stanley Smith Barney, LLC,* 2013 WL 1344831, *3 (C.D. Cal. 2013).

Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

**2. Second and Third Affirmative Defenses: Harm Caused by Third-Parties Over Whom Ignite Had No Control; Fifth and Eleventh Affirmative Defenses: Failure to Name Necessary and/or Indispensable Parties**

**a. Elements**

These related affirmative defenses amount to Ignite's claim that it was Josh Ryan and/or LA Models that were Pavillard's employer, and not Ignite, which is addressed at Section II.B, *supra*.

**b. Key Evidence and Argument in Opposition**

Given California law on the issue of talent agencies' non-employer status, and the Court's ruling as to LA Models (Dkt. 48), Pavillard has requested in her Motion in Limine No. 2 (Dkt. 62) that Ignite be precluded from telling the jury that LA Models is Pavillard's employer. If she is required to rebut any argument or showing by Ignite that LA Models is her employer, there will be party testimony, judicially noticed documents, and documentary evidence that will demonstrate that LA Models was not Pavillard's employer.

1    Key evidence to refute Ignite's claim that Josh Ryan was her employer will

2    consist of party testimony from Pavillard and Josh Ryan, and documentary evidence.

### 3.  Fourth Affirmative Defense - Statute of Limitations

3

4    There is no statute of limitations bar to Pavillard's complaint. The statute of

5    limitations for a claim under Labor Code § 203 is three years from the date of the

6    harm and Pavillard's claim was brought within that time. *See* Labor Code § 203(b);

7    *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395 (2010) (statute for § 203 penalties

8    is three years).

9    To the extent that Ignite pursues this defense, Pavillard will present her

10   testimony establishing the date of the Photo Shoot and the date her complaint was

11   filed, which are within the same three-year period.

### 4.  Sixth Affirmative Defense – Mitigation

12

13   There is no requirement that an employee attempt to "mitigate" an employer's

14   violation of a law. These are not damages but rather, statutorily mandated penalties.

15   To the contrary, California law expressly provides that neither an employee or an

16   employer can waive statutory rights. Labor Code § 219(a) ("no provision of this article

17   can in any way be contravened or set aside by a private agreement, whether written,

18   oral, or implied.") Because this is not a cognizable affirmative defense, there are no

19   elements or evidence to identify individually. However, to the extent that Ignite

20   pursues a claim of "mitigation," evidence in support of Pavillard's standing will

21   consist of party testimony and documentary evidence about the Photo Shoot.

### 5.  Seventh Affirmative Defense – Lack of Standing/Jurisdiction

22

23   Pavillard's standing to bring this lawsuit and the Court's jurisdiction are

24   questions of law. There are no jurisdictional or standing issues in this case.

25   However, to the extent Ignite pursues this defense, evidence in support of Pavillard's

26   standing will consist of party testimony and documentary evidence about the Photo

27   Shoot.

28

### 6. Eighth Affirmative Defense – No Attorneys' Fees

This is a question of law which will be briefed should Pavillard prevail in this action. As an "action brought for the nonpayment of wages," reasonable attorneys' fees are awarded to a plaintiff who prevails on a Labor Code § 203 claim, pursuant to Labor Code § 218.5. *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1256 (2012). If she prevails, Plaintiff will make an application to this Court for her reasonable attorneys' fees incurred in prosecuting this action.

Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

### 7. Ninth Affirmative Defense – Lack of Consideration

#### a. Elements

Though it is unclear based on the factually devoid nature of this defense, Ignite appears to be claiming with this defense that Pavillard failed to perform any services for Ignite.

Failure to perform or failure of consideration[1] "is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." *Boswell v. Reid*, 199 Cal.App.2d 705, 713 (1962), quoting *Bliss v. California Cooperative Producers*, 30 Cal.2d 240, 248 (1947). "Such defense rests upon some fact or contingency which occurred between the time of the making of the contract and the action thereon, resulting in the material failure of performance by one party." *Boswell*, 199 Cal.App.2d at 712-13; *see also Taliaferro v. Davis*, 216 Cal.App.2d 398, 411 (1963) ("[F]ailure of consideration is based, not upon facts existing at the time the mutual promises bargained for in a bilateral contract are made, but upon some fact or contingency which occurs between the time of the making of the contract and the action which results in the material failure of performance by one party"; emphasis

---

[1] See Restatement (Second) of Contracts § 237 (1981) ("What is sometimes referred to as 'failure of consideration' by courts and statutes (e.g., Uniform Commercial Code § 3-408) is referred to in this Restatement as 'failure of performance' to avoid confusion with the absence of consideration.")

14

added.)

### b. Key Evidence and Arguments in Opposition

Pavillard will present party testimony and documentary evidence demonstrating that she did in fact fully perform service for Ignite, with Ignite's knowledge and acceptance of such services.

### 8. Tenth Affirmative Defense – Defendant is Not the Real Party in Interest

#### a. Elements

Ignite apparently intends to argue, separate from its claims that Josh Ryan is Pavillard's employer, that some other entity is the real defendant.

#### b. Key Evidence and Argument in Opposition

Pavillard will present party and witness testimony and documentary evidence demonstrating that Ignite was her employer. Ignite has already conceded that the Photo Shoot was for its (vs. some other entity's) "marketing campaign." *See, e.g.*, Dkt. 9 (Ignite's third-party complaint against Josh Ryan) ¶ 23; *see also* Dkt. 1 (Ignite's Notice of Removal) (conceding that Ignite hired Josh Ryan). Ignite's position is that either LA Models or Josh Ryan are responsible. *See* Dkt 1 at 1:24-2:8. Ignite did not move to dismiss Pavillard's complaint and has fully participated in this action including producing its Person Most Knowledgeable regarding the Photo Shoot; there is no other proper entity or defendant except Ignite.

### 9. Twelfth Affirmative Defense – No Privity of Contract Between Plaintiff and Defendant

#### a. Elements

Ignite apparently intends to claim that it did not contract with Pavillard, but there was someone else who did. This appears to be part of its argument that it was Josh Ryan and/or LA Models who employed Pavillard, but not Ignite.

#### b. Key Evidence and Argument in Opposition

Pavillard will present party and witness testimony and documentary evidence

15

demonstrating that Ignite was her employer, and that Ignite's personnel and agents confirmed that Pavillard was to be paid by Ignite.

## 10. Thirteenth Affirmative Defense – Reservation of Additional Defenses

Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

## 11. Fourteenth Affirmative Defense – Denial of All Claims

Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

## 12. Fifteenth Affirmative Defense – Request for Attorneys' Fees

Ignite is not permitted to seek attorneys' fees against Pavillard in defending this action unless the court finds this action was brought in bad faith. Labor Code § 218.5 (permitting recover of attorneys' fees by a prevailing plaintiff only). However, this is not an affirmative defense, it is an argument that Ignite is apparently going to make if Pavillard is not successful. Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

## 13.Sixteenth Affirmative Defense – Incorporation by Reference to "All Affirmative Defenses Set forth in FRCP 8 and 12"

Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually. There is nothing to indicate which of the several defenses set forth in Fed.R.Civ.P. 8 and/or 12 could be the subject of Ignite's reference.

## C. Additional Issues Anticipated

### 1. "Prior Performance of Accord"

Ignite may claim that Pavillard "settled" this matter in May 2020 for $7,500. Ignite proposed an amended answer to the Court in July 2021 (Dkt. 51), which Pavillard stipulated to solely to avoid motion practice, and which the Court has not approved. The amended answer offered an affirmative defense for "prior performance

16

of accord." It is unclear if Ignite is going to proceed on any "perior performance of accord" defense given that the Court has not approved Ignite's amended pleading. Even if its amended answer was permitted, however, the "accord and satisfaction" defense will fail.

First, at the time Ignite demanded that Pavillard accept a settlement of $7,500 in order to receive her wages, they were still due. Any alleged settlement that occurred while wages were still owing to Pavillard is "null and void." Labor Code § 206.5(a); *Reid v. Overland Machined Products*, 55 Cal.2d 203, 207 (1961)(employer must pay wages due and leave to the employee all available remedies for the balance; "[a]n employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid.").

Second, Pavillard's position is that there was no settlement. There are no documents to support a settlement; there will be no trial testimony to support a settlement.

Finally, even if there was or could be a settlement given Labor Code § 206.5, Ignite did not perform the terms. It is undisputed that on May 22, 2020, Ignite only paid Pavillard her original wages of $3,000, and no more than that.

### 2. "Good Faith Dispute" Defense:

Ignite has refused to confirm whether it is intending to plead a "good faith dispute" defense; Pavillard filed a motion in limine to preclude any "good faith dispute" given Ignite's refusal to provide any discovery or to even confirm it is not intending to proceed with that defense, and given that a good faith dispute defense cannot arise solely from a mistake of law, as Ignite proposes to argue in this case. *Gomez v. J. Jacobo Farm Labor Contractor, Inc*., 188 F.Supp.3d 986, 1002 (E.D.Cal. 2016)("There is no good faith mistake of law defense under the California Labor Code. In other words, an employer's mistaken belief it that complies with the Labor Code does not excuse failures to do so.") (citations omitted). Pavillard

respectfully requests that the Court grant that motion in limine for the reasons set forth in Dkt. 61.

### III.   ANTICIPATED EVIDENTIARY ISSUES

Pavillard has prepared and filed three motions in limine, which involve evidentiary issues and which are separately set forth at Dkts. 61-63.

Ignite produced a total of 30 pages of discovery in this action, gave evasive discovery responses, and produced a Person Most Knowledgeable who completely lacked knowledge on the vast majority of topics on which he was questioned. Pavillard has learned that Ignite does not even intend to produce a corporate representative at the trial (though it is bound by the answers it gave at its deposition).  In particular, Ignite prevented and frustrated Pavillard's attempts to gather evidence to address the second factor of the ABC Test, i.e., whether hiring live models is outside the usual course of Ignite's business. From Pavillard's standpoint, Ignite should not be permitted to introduce evidence as to this element if the ABC Test is the one that is selected.

Ignite has also made two motions in limine – to exclude evidence and argument of "damages" not disclosed in discovery, and to exclude as a witness its outside general counsel Kimberly Stein, who participated in the 2019 and 2020 discussions surrounding payment to Pavillard and Ignite's attempt to have her settle her claims without paying her wages. Pavillard has no objection to the exclusion of Ms. Stein, as long as Ignite is also precluded from claiming any "prior performance of accord" defense.

Pavillard is serving Dan Bilzerian, Ignite's Director, with a Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, given Mr. Bilzerian's public representations that he regularly transacts business in person in California and in particular, in Los Angeles. It is unclear whether Mr. Bilzerian will comply, but this is an issue to be resolved.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## IV.   ANTICIPATED ISSUES OF LAW

The Parties have discussed whether the ABC Test or the *Borello* test should apply. They discussed both standards and agreed during meet and confer that either are possible. However, Pavillard contends that the ABC Test should apply and requests that the Court apply that test, whether or not a jury is empaneled.

"The rule on employment status has been that if there are disputed facts, it's for the jury to decide whether one is an employee or an independent contractor. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 342. However, on undisputed facts, the court may decide that the relationship is employment as a matter of law. (*Dynamex, supra*, 4 Cal.5th at p. 963.") *See* CACI No. 2705, Directions for Use.

It is unclear what facts Ignite contends are disputed as to Element A. But given the Court's superior knowledge of the significance of the various factors and the nuances of "control" and "direction" as explained by decades of California law, and given the undisputed facts about the conditions at the Photo Shoot, Pavillard submits that the Court should make the determination as to Element A. *E.g., Castaneda v. Ensign Group, Inc*., 229 Cal.App.4th 1015, 1019 (2014) (supervision viewed as one of the 'working conditions').

From Pavillard's point of view, Ignite cannot establish that there are any disputed facts that should reach a jury on element B. While Ignite precluded discovery of its marketing practices and its business, and the Court will need to determine the consequences (if any) to Ignite for doing so, Pavillard and Josh Ryan will provide testimony and documentary evidence that Ignite routinely hires and uses live human models for marketing purposes, and thus, modeling services are **not** outside the usual course of Ignite's business.

For purposes of Element C, Pavillard will concede that she is a model, and thus is engaged in an independently established occupation of the same nature as the work performed for Ignite. CACI No. 2705 provides that when one element is not

19

disputed, it should not go to the jury in the first instance. However, Pavillard contends that the element must still be read to the jury as part of the instructions. Initially, Pavillard requested a jury, as did Josh Ryan, defendant in the third-party complaint filed by Ignite. But for all of the foregoing reasons, and because of the ongoing severe issues with the pandemic, Pavillard now desires to have the Court try the case. Josh Ryan has also agreed to have the Court try the case. As of the submission of this Memorandum, Ignite has not.

## V. JURY TRIAL

### A. Issues Triable to the Jury

1. Whether Pavillard was in fact free from the control and direction of Ignite in connection with the performance of work that she was hired to do. CACI No. 2705; Labor Code § 2775.

2. The date on which Pavillard's wages were due; her daily wage rate at the time her employment with Ignite ended; and the date on which Ignite finally paid the wages. CACI No. 2704.

3. Whether Ignite intentionally failed or refused to pay Pavillard's wages. CACI No. 2704; Labor Code §§ 201, 203.

### B. Issues Triable to the Court

1. Whether Ignite has presented enough disputed facts to present Element A of the ABC Test for independent contractor status to the jury;

2. Whether Ignite has presented enough disputed facts to present Element B of the ABC Test for independent contractor status to the jury;

3. Entitlement to and amount of attorneys' fees.

## VI.   ATTORNEYS' FEES

Should she prevail, Pavillard will seek an award of attorneys' fees and costs pursuant to Labor Code § 218.5(a). Under this statute, Pavillard is entitled to reasonable attorneys' fees and costs.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## VII.   ABANDONMENT OF ISSUES

Pavillard has not abandoned any claims. Pavillard is unclear what affirmative defenses Ignite intends to plead. Pavillard intends to argue that Ignite, and not Josh Ryan, was her employer.

Dated: January 10, 2022          **THIGPEN LEGAL, P.C.**

                                 */s/ Jordanna G. Thigpen*
                                 JORDANNA THIGPEN, ESQ.
                                 *Attorneys for Plaintiff Caley Rae Pavillard*

Dated: January 10, 2022          **EXCELSIOR LAW**

                                 */s/ Roger Muse*
                                 ROGER MUSE, ESQ.
                                 JOHN MATHENY, ESQ.
                                 *Attorneys for Plaintiff Caley Rae Pavillard*

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Jordanna G. Thigpen, am the ECF User whose identification and password are being used to file this **PLAINTIFF PAVILLARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW.**

In compliance with Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories concur in filing this document.

Dated: January 10, 2022          **THIGPEN LEGAL, P.C.**

*/s/ Jordanna G. Thigpen*
JORDANNA THIGPEN, ESQ.
*Attorneys for Plaintiff Caley Rae Pavillard*