1

2
**RYAN ELLIS LAW CORPORATION**
Ryan A. Ellis, Esq. (SBN: 272868)

3
3268 Governor Drive, Suite 140
San Diego, CA 92122

4
Telephone: (858) 247-2000
Email: ryan@ryanellislaw.com

5

6
*Attorneys for Defendant*
Ignite International, Ltd.

7

8
## UNITED STATES DISTRICT COURT

9
## CENTRAL DISTRICT OF CALIFORNIA

10
CALEY-RAE PAVILLLARD, an
individual,

11
          Plaintiff,

12
            vs.

13
IGNITE INTERNATIONAL, LTD., a
Wyoming limited company; and

14
DOES 1-25, inclusive.
          Defendants.

15

16
IGNITE INTERNATIONAL, LTD., a
Wyoming limited liability company,

17

18
      Third-Party Plaintiff,
          v.

19
JOSH RYAN, an individual d/b/a
JOSH RYAN PHOTOGRAPHY; LA

20
MODELS, INC. and ROES 1-10,
inclusive,

21

22
      Third-Party Defendants.

23

24

25

26

27

28

---

**Case No.**: 2:21-cv-01306-RGK-E
[Los Angeles County Case No. 20STCV37942]

**IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL**

**ORAL ARGUMENT REQUESTED**

**Trial Date:** April 12-13, 2022

---

Defendant Ignite International, Ltd. ("Ignite" OR "Defendant") by and through its attorneys of record, hereby moves this Court for a judgment as a matter of law ("Motion").

This Motion is based on the following Memorandum of Points and Authorities,  the Declaration of Ryan A. Ellis (the "Ellis Declaration") filed concurrently herewith, all pleadings and records on file herein, the testimony and evidence presented at trial, and on such oral and documentary evidence as may be presented at the hearing on this Motion.

Dated: April 19, 2022       **RYAN ELLIS LAW CORPORATION**

By: _/s/ Ryan A. Ellis_

RYAN A. ELLIS, ESQ.
*Attorneys for Defendant/Third-Party*
*Plaintiff Ignite International, Ltd.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Ignite International, Ltd. ("Ignite" OR "Defendant") previously moved for a judgment as a matter of law at the close of the Plaintiff Caley Rae Pavillard's ("Pavillard" or "Plaintiff") case in this matter, and again prior to the case being submitted to the jury as to the sole cause of action contained in the Complaint filed by Plaintiff for late-wage-payment penalties pursuant to Labor Code §203.  The Court acknowledged the motions and allowed Defendant to reserve its rights to bring this Motion based on the current briefing schedule.

The evidence presented at trial clearly and unequivocally establishes: (1) Plaintiff has failed to offer any evidence that Ignite Cannabis Co. is related in any way to Ignite International, Ltd.; (2) that given such uncertainty in the evidence, Ignite was not, and could not have been, on notice that it owed any obligations to Plaintiff after the completion of the October 5, 2018 photoshoot and thus could not have acted willfully towards the Plaintiff resulting in the imposition of penalties under Labor Code §203; (3) that as a matter of law and according to the evidence that the "date of discharge" presented and/or when payment would have been due is unclear; and (4) Plaintiff's "daily rate" was not $3,000.00. Thus, this matter should never have been presented to the jury as a matter of law.

The jury was empaneled on April 12, 2022. After Plaintiff rested her case-in-chief, Ignite brought its Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. Proc. ("FRCP") 50(a) outside the presence of the jury. The Court instructed Ignite's counsel that it would not take argument on the Motion, but that Ignite's ability to bring the Motion would be reserved until a later date to be determined by the Court. The trial proceeded. Ignite again renewed its Motion at the close of its case in chief, and again the Court instructed that it would not take argument on the Motion, but that Ignite's ability to bring the Motion would be reserved until a later date to be

1    determined by the Court. The jury returned a verdict on April 13, 2022. After the

2    verdict was read, and the jury released, this Court set a deadline for Ignite to submit

3    briefing on its Motion for April 19, 2022 [Dkt. 112]. As such, Ignite's Motion is

4    timely filed. *See* FRCP 50(a).

5    **II.   LEGAL STANDARD**

6         The standard for granting judgment as a matter of law is analogous to the

7    standard for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

8    U.S. 133, 150 (2000); *see also Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir.

9    2017). To avoid judgment as a matter of law, the non-moving party must set forth

10   "substantial evidence" on each claim or issue, meaning "relevant evidence that a

11   reasonable mind would accept as adequate to support a conclusion." *See Gillette v.*

12   *Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). The "mere existence of a scintilla of

13   evidence" is insufficient to present a question for the jury. *Anderson v. Liberty Lobby,*

14   *Inc.*, 477 U.S. 242, 252 (1986).

15   **III.   ARGUMENT**

16        **A. UNDISPUTED TESTIMONY FROM EVERY WITNESS**

17           **CONFIRMED IGNITE INTERNATIONAL, LTD. WAS NOT**

18           **PLAINTIFF'S EMPLOYER**

19        It should be undisputed that Plaintiff bears the initial burden of establishing

20   that her employment with the ***Defendant*** ended. *See* Court Instruction No. 30, part 1

21   [Dkt. No. 105 at p. 38]. Plaintiff's Complaint in this action [Dkt. No. 1-2] only names

22   one party, Ignite International, Ltd. When asked at trial who she believed she was

23   performing modeling services for, she responded "Ignite Cannabis Co." The only

24   other live testimony elicited the same result. Josh Ryan d/b/a Josh Ryan Photography

25   ("Ryan") testified that he believed he was also performing services for "Ignite

26   Cannabis Co." for the photoshoot. To further solidify this point, Ryan also testified

27   that the "Ignite" he worked for was a "lifestyle brand" and not a cannabis company.

28        The documentary evidence confirms both witnesses' testimony: First, Trial

Exhibit 7 is the model release signed by Plaintiff's modeling agent pertaining to the use of Plaintiff's image and likeness by Ignite Cannabis Company. *See* Ellis Declaration, ¶3. The model release clearly and unambiguously identifies the "company" as "Ignite Cannabis Co." Second, Trial Exhibit 6 is an email chain. Within that email conversation is an email dated October 4, 2018 from Ryan to Plaintiff's modeling agency. *See* Ellis Declaration, ¶2. In this email, Ryan introduces the photoshoot to Plaintiff's agent as a "fashion/editorial shoot" for "Company: Ignite Canibus" [sic]. *Id.* Finally, even the images admitted into evidence of billboards in Los Angeles (Trial Exhibit 35) which depict Plaintiff also clearly – in very large print – state "Ignite Cannabis Co." *See* Ellis Declaration, ¶9.

This is important because Plaintiff not only failed to bring her claim against Ignite Cannabis Co., but also failed to offer any evidence, either through oral testimony or in the form of a document, connecting Ignite Cannabis Co. to Defendant Ignite International, Ltd. Therefore, no reasonable jury could infer that Ignite International, Ltd. was Plaintiff's employer without any evidence to support such a claim. As a matter of law, Plaintiff failed to provide any evidence of how the Defendant would be obligated to this claim, even if Plaintiff prevailed as she did.

## B. IGNITE DID NOT AND COULD NOT HAVE ACTED WILLFULLY BECAUSE IGNITE AT ALL TIMES ACTED IN GOOD FAITH AS IT BELIEVED PLAINTIFF WAS PROVIDING SERVICES AS AN INDEPENDENT CONTRACTOR FOR THE PHOTOSHOOT

"If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *See* Cal. Labor Code §203(a).

"As used in section 203, 'willful' merely means that the employer

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

intentionally failed or refused to perform an act which was required to be done." *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36, 54 (2013). "In civil cases the word 'willful' as ordinarily used in courts of law, does not necessarily imply anything blameable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done, was done or omitted intentionally. It amounts to nothing more than this: **That the person knows what he is doing, intends to do what he is doing**, and is a free agent." *Nishiki v. Danko Meredith, P.C.* 25 Cal.App.5th 883, 891 (2018) [emphasis added]. Without any knowledge as shown below, Ignite could not have acted with any intent, thereby precluding the required willfulness required for Plaintiff's sole cause of action. *See Nishiki, supra*, 25 Cal.App.5th at 891.

Additionally, an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness. *Choate v. Celite Corp.*, 215 Cal.App.4th 1460, 1468 (2013). A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee. *Kao v. Holiday*, 12 Cal.App.5th 947, 963 (2017) [internal citation omitted]. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. *Id.* An employer's good faith belief is an equitable defense to whether nonpayment of wages is willful within the meaning of § 203. *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1 (Cal. App. 1st Dist. Oct. 29, 1981). A good faith dispute exists as to whether Plaintiff should be classified as an employee or independent contractor. *See* Dalton v. Lee Publ'n, Inc., No. 08-cv-1072 BTM (NLS), 2011 U.S. Dist. LEXIS 29835, 2011 WL 1045107, at *5-6 (S.D. Cal. Mar. 22, 2011).

The evidence at trial confirms that Ignite was acting in good faith, specifically that it believed Plaintiff was performing services as a model for the October 2018 photoshoot as an independent contractor. In fact, Ignite was working under the assumption that everyone involved in the photoshoot was an independent contractor.

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Ignite reasonably believed that Plaintiff was acting as an independent
2    contractor for the photoshoot, confirmed by the applicable test utilized by the Courts
3    to determine the same. *See Dynamex Operations West, Inc. v. Superior Court,* 4
4    Cal.5th 903, 913–914 (2018). The Court in *Dynamex* confirmed a three-part test for
5    an employer to determine whether or not an individual is an employee or an
6    independent contractor. The "ABC Test" looks to three factors to assist in making
7    this determination: (a) that the worker is free from the control and direction of the
8    hirer in connection with the performance of the work, both under the contract for the
9    performance of the work and in fact; and (b) that the worker performs work that is
10   outside the usual course of the hiring entity's business; and (c) that the worker is
11   customarily engaged in an independently established trade, occupation, or business
12   of the same nature as that involved in the work performed. *Id.* at 955-956.

13       **1.  The ABC Test**

14           **a.  Plaintiff was Under the Control and Direction of Ryan, not**
15               **Ignite**

16       The testimony and evidence admitted at trial support that Ryan was in charge
17   of and directing the actual October 2018 photoshoot, not Ignite. In addition to being
18   in charge of casting, Ryan testified he was the photographer of the shoot, his job in
19   that capacity to suggest the best layouts for the photos, be sure he set up correct shots,
20   and that he took the right pictures. Ryan further testified that the photoshoot was at
21   his studio in Los Angeles, and that he chose that location. Not only the studio, but
22   Ryan also testified that he was the one who set the start and end times for the
23   photoshoot. In an unexpected response to a question from Plaintiff's counsel, Ryan
24   testified that it was he who set the lunch break and had control over the rest periods
25   (which didn't occur).  Ryan even testified that Plaintiff was free to leave at any time,
26   and that if she did, Ryan himself would have to find another model - not Ignite.

27       Ryan's control over the photoshoot and the process is confirmed by Trial
28   Exhibit 23. This exhibit is a "call sheet," a document identifying information

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

pertinent to participants at the photoshoot. *See* Ellis Declaration, ¶7. Ryan testified that he prepared and sent this call sheet to everyone involved with the photoshoot. *Id*. This call sheet identifies several individuals who were hired by and in control of Ryan for the photoshoot: two (2) people for hair and makeup, a stylist, a digital technician, two (2) assistants, and a "P/A." *Id.* Ryan's testimony confirmed that all of these people were hired by, under the control of, and paid by, Ryan.

Other factors to be considered also support Ignite's good faith belief that Plaintiff was performing services as an independent contractor for the October 2018 photoshoot: Plaintiff was required to hold a skill as a model, which she possessed as a professional model performing those same services for several other companies since 2015. Ryan testified that the hair, makeup, and wardrobe Plaintiff wore during the photoshoot was provided by the individuals hired, paid, and under the control of Ryan. *See also* Trial Exhibit 23, Ellis Declaration at ¶7. Plaintiff was performing modeling services for the photoshoot on a very limited basis, for only the one day of the photoshoot. Plaintiff's testimony as well as the booking confirmation (Trial Exhibit 15) confirm that she was to receive payment for her participation in the photoshoot from her modeling agency, not directly from anyone, Ryan, Ignite or otherwise. *See* Ellis Declaration, ¶4.

### b. Plaintiff Performed Services for Ignite Outside the Usual Course of its Business

Both of Plaintiff's witnesses testified that Ignite Cannabis Co. was a cannabis company. Ryan further testified that "Ignite" was no longer a cannabis company and was a "lifestyle brand." No other testimony was offered to support or suggest otherwise. As such, Defendant Ignite International, Ltd. is not a marketing company, a talent agency, a photographer, or a photography studio. It is undisputed that Plaintiff provided modeling services in October 2018 for the marketing of a new cannabis product line. Therefore, the services provided by Plaintiff in conjunction with the October 2018 photoshoot were outside of Defendant Ignite's usual course of business

and no reasonable jury could find otherwise.

### c. Plaintiff is a Professional Model who is Customarily Engaged by Companies as a Model

This final element should be undisputed by the Parties but must be discussed for completeness. Plaintiff testified that she is a professional model and has been since she graduated college in 2015. Plaintiff also testified that modeling is her main source of income, with the only other "job" she has being assisting her sibling with starting a business.

Ignite simply cannot be found to have acted in bad faith or intentionally in any way relating to Plaintiff and the services she performed in October 2018. Ample testimony and evidence was admitted relating to the photoshoot, the lack of notice to Ignite of the details of Plaintiff's participation, and who had control over the photoshoot itself. Further testimony was elicited regarding the notice (or lack thereof) provided to Ignite by Ryan (of any obligation arising out of the booking confirmation) or from Plaintiff (as she herself failed to make any demand to Ignite for payment). All of this evidence supports Ignite's position that it was not Plaintiff's employer, but more importantly that Ignite held a reasonable, good faith belief that Plaintiff was performing services for the October 2018 photoshoot as an independent contractor and not as Ignite's employee. Therefore, no reasonable jury could find that Ignite acted unreasonably or in bad faith. Ignite's good faith defense is valid and entirely defeat Plaintiff's claim for penalties under Labor Code §203.

### 2. Ignite Could Not have been on Notice of Any Obligation to Pay Plaintiff on the Date of the Photoshoot

#### a. Clear and Unambiguous Evidence Confirms that Ryan was in Charge of Securing Talent for the Photoshoot and that All Billing was to be Sent to the Advertising Agency

During trial, Ryan testified that he was involved in the photoshoot from the early stages, at least since September 2018. Ryan's early involvement is confirmed

by Trial Exhibit 20, an email dated September 22, 2018 regarding planning and ideas regarding the photoshoot. *See* Ellis Declaration, ¶5.[1] In the correspondence between all of the individuals involved – including Ryan – everyone was informed that all bills were to "go through Soda and Lime." *Id.*

In addition to being the photographer, he was also in charge of casting and securing. *Id; see also* Trial Exhibit 6 (Ryan correspondence with Plaintiff's modeling agency to secure Plaintiff for photoshoot); Trial Exhibit 15 (Booking Confirmation containing Ryan's signature); Trial Exhibit 21 (Ryan informing everyone he was "still working on talent"). *See* Ellis Declaration, ¶¶2, 4, 6. Further, both Plaintiff and Ryan testified that it was Ryan who negotiated Plaintiff's participation in the photoshoot with LA Models– not anyone from Ignite.

Ignite was not only without the knowledge of how Plaintiff was to be paid *in general,* but it was also without knowledge of the final negotiated rate and/or the date any payment(s) to Plaintiff were due. Without any notice from Ryan, the person who negotiated for Plaintiff to be a model in the photoshoot, the only way Ignite would have been made aware of its requirement to pay Plaintiff would have been through Soda & Lime. This chain of command that all parties involved in the photoshoot were to follow is very important. This is because it relates to Ignite's "intent" as related to the "willful" requirement of Labor Code §203. Ignite cannot intentionally or willfully fail to pay Plaintiff when it was not informed of its obligation to do so. Ryan was the party in charge of referring, negotiating, and securing talent for the photoshoot. In his efforts, any and all invoices/bills for his services were to be sent through the advertising agency, Soda & Lime.

At trial, there was no evidence proffered to rebut any of this testimony. In fact, the only attempt to do so was Plaintiff's statement that she "looked everywhere" after the photoshoot for an Ignite representative but was unable to locate anyone to discuss

---

[1] To avoid any confusion, Ryan testified that this September 22, 2018 email was one of the initial conversations that evolved into and became the October 2018 photoshoot.

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

this issue, which does not match the booking confirmation (Exhibit 15) of Plaintiff's own talent agency. *See* Ellis Declaration, ¶4. Therefore, Ignite was acting in accordance with its understanding as outlined in the September 22, 2018 email wherein Ignite was expecting any and all bills to be processed and paid through Soda & Lime, the advertising agency in charge of the photoshoot.

**b. The Booking Confirmation which "Secured" Plaintiff for the Photoshoot was Not Completed until a Week After the Photoshoot, and was Signed by Ryan who Admittedly had No Authority to Sign on Ignite's Behalf and Failed to Provide Ignite with Any Notice**

The only document that comes close to referencing Ignite with Plaintiff is the booking confirmation admitted into evidence as Trial Exhibit 15. *See* Ellis Declaration, ¶4. The booking confirmation is a document provided by Plaintiff's talent agency, LA Models, to Ryan, purporting to contain the terms of the "agreement" for Plaintiff to provide modeling services for the October 5, 2018 photoshoot. *Id.* Interestingly, the booking confirmation contained in Trial Exhibit 15 (a) is dated October 12, 2018; (b) is signed by Josh Ryan who testified at trial that he had no authority from Ignite to sign the document; and (c) was not provided to Ignite by Ryan, further supporting that Ignite was not aware of any obligation it had to pay Plaintiff at the conclusion of the photoshoot.

The case law is clear that Ignite must be aware of its obligation to pay Plaintiff to be found to have acted willfully before it can be found liable under §203. *See Nishiki, supra*, 25 Cal.App.5th at 891. Courts have found good faith disputes in a failure to pay wages when the legal duty to pay the wages was unclear at the time of the failure to pay. *See Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1201–1202 (2008). First and foremost, the booking confirmation alone supports that Ignite was not on notice of any obligation for it to pay Plaintiff at the time of her "discharge." This is because the booking confirmation was not signed until October

12 – seven days *after* the date of the photoshoot. *See Ellis Declaration, ¶4.* Under any of Plaintiff's theories of when payment to her was due, either that Plaintiff was to be paid immediately after the photoshoot or within seventy-two hours thereafter, Ignite could not have been on notice until October 12, 2018 *at the earliest.* Also, and as an aside, the booking confirmation provides that payment for Plaintiff's services was to be made to LA Models, and not to Plaintiff directly. *Id.*

Second, the booking confirmation is clearly signed by Ryan. *Id.* When asked about the booking confirmation at trial, Ryan testified not only that he signed the document, but also that he had no authority to sign on behalf of Ignite. Plaintiff provided no testimony to support that Ryan had the requisite authority to enter into any sort of agreement on behalf of Ignite. This is because no such evidence (oral or written) exists. This also directly contradicts the instruction from Ignite for Ryan to have any and all bills "go through Soda & Lime." *See* Trial Exhibit 20, Ellis Declaration at ¶5. Without any authority to bind Ignite in any way, and without any notice that Ryan would be entering into any agreements with anyone, including Plaintiff, on Ignite's behalf, Ignite cannot be imputed to know its obligations to Plaintiff on October 12, 2018 – let alone the date of the photoshoot on October 5, 2018.

Finally, Ryan testified that he did not notify anyone at Ignite that he signed the booking confirmation. Ryan further testified that he never told anyone at Ignite that Plaintiff was required to be paid immediately after the photoshoot. Any such this testimony would not be logical, as the plain language of the booking confirmation clearly identifies that any payments to Plaintiff were not to be made to her, but instead to her talent agency LA Models.

The booking confirmation itself and the circumstances of its execution entirely undermine any "willful" requirement under Labor Code §203. As a result of Ryan signing the booking confirmation seven (7) days after the photoshoot, without any authority from Ignite, and without providing any notice to Ignite of the existence of

the booking confirmation, Ignite could not have been on notice of any obligation between itself and Plaintiff until October 12, 2018 *at the earliest*. Therefore, Ignite would not have been on notice at the time of Plaintiff's discharge, or within seventy-two (72) hours of the photoshoot, that it was required to pay Plaintiff anything at all. Without any notice of any obligation to pay Plaintiff at the time of her discharge, Ignite could not hold the requisite intent to willfully fail to pay Plaintiff any money for her participation in the photoshoot, entirely negating the required "willful" element of Labor Code §203.

### c. Ignite was Not on Notice of any Payment Owing to Plaintiff as She Never Made any Demand for Payment to Ignite International

"An employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment when fully tendered to them, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which the employee so avoids payment." *See* Labor Code §203(a). The undisputed evidence at trial shows that (a) Plaintiff waited until February 2019 to inquire for the first time as to her nonpayment for the October 2018 photoshoot; and (b) Plaintiff never personally communicated with Ignite at any time regarding her nonpayment until late April 2020.

Plaintiff did not make any demand to *anyone* for payment for her participation in the October 5, 2018 photoshoot until February 2019, four (4) months after the conclusion of the photoshoot. This first "demand" from Plaintiff was to the photographer (Ryan), and not to Ignite. This "demand" was made to Ryan despite Plaintiff's fervent claim that she was an Ignite employee, and that she believed she was to be paid by Ignite. Plaintiff also failed to testify to, or offer any evidence to support, that she even knew how much she was supposed to be paid on the date of the photoshoot. As explained above, the booking confirmation was not executed by Ryan until October 12, and not signed in any capacity by Plaintiff. Plaintiff cannot

on one hand claim to demand payment from Ignite after the photoshoot, when on the other hand she was not aware of the payment she was supposed to receive, and/or that any such payment was to be made by Ignite to her agency (and not to Plaintiff directly).

In addition to Plaintiff's delay in time, her failure to request payment <u>herself</u> from Ignite also precludes Plaintiff's claim under Labor Code §203. Despite her testimony at trial that she at all times believed she was an "Ignite employee," she never actually requested payment from Ignite. Plaintiff first requested payment in February 2019 from the photographer Ryan. After that, Plaintiff's agency (LA Models) attempted to communicate with Ryan, to no avail.

It was in May 2019 when someone from Ignite first learned of Plaintiff's claim she was not paid for the October 2018 photoshoot. Ignite's knowledge is shown by a message between Ryan and Dan Bilzerian in May 2019. *See* Ellis Declaration, ¶8. In Trial Exhibit 34, Mr. Bilzerian states to Ryan "[w]hy on earth would you not tell me if a model wasn't paid. *Id.* Upon becoming aware of Plaintiff's nonpayment, Plaintiff's testimony at trial confirmed that Mr. Bilzerian sent a message directly to her on May 29, 2019. Plaintiff did not respond to that message. Fast forward to April 2020, a year and half after the photoshoot, Plaintiff finally responded. Plaintiff's testimony also confirms that once she responded to Mr. Bilzerian's message, she received payment in full.

Plaintiff's four-month delay in communicating with anyone regarding payment due to her from the October 2018 photoshoot is a prime example of her improperly "secreting herself" under §203. Even further, and as shown by the evidence, Plaintiff at no time initiated any communication with Ignite about her nonpayment, and once she spoke with someone from Ignite in April 2020, she was promptly paid. Labor Code §203 specifically precludes Plaintiff to sit on her hands by failing to communicate with anyone about her nonpayment, simply to accumulate a penalty under the statute. Plaintiff's actions as described herein were not proper and were not

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

explained by her testimony at trial. Plaintiff's failure to communicate with anyone at Ignite until over a year and a half after the photoshoot, coupled with her actions in speaking with the photographer - who Plaintiff knew did not work for Ignite - do not support a claim for penalties under Labor Code §203.

After considering all of the evidence and the argument presented above, no reasonable jury could find that Ignite held the requisite intent necessary to "willfully" fail to pay Plaintiff for her participation in the October 5, 2018 photoshoot.

### d.  Any Payment to Plaintiff was Conditioned on Obtaining a Release for the use of Plaintiff's Likeness

In addition to the fact that Plaintiff's services were obtained through the exclusive negotiations between Ryan and LA Models (*See* Trial Exhibit 6, Ellis Declaration at ¶2), payment to Plaintiff for her services at the October 2018 photoshoot was conditioned on her release for the use of her image and likeness. *See* Trial Exhibit 15, Ellis Declaration at ¶4. Further, the release was not signed until October 15, 2018, ten (10) days after the photoshoot. *See* Trial Exhibit 7, Ellis Declaration at ¶3. Utilizing the terms directly from the booking confirmation, any payment to Plaintiff was conditioned on her consent to the terms of the release. *See* Ellis Declaration at ¶4. Therefore, any payment to Plaintiff could not be due until, at the earliest, October 15, 2018.

### C.  PLAINTIFF FAILED TO ESTABLISH HER "DAILY RATE" AND/OR HER "DATE OF DISCHARGE"

It is Plaintiff's burden to prove her "daily rate" and her "date of discharge" in order to prevail under a Labor Code §203 claim. *See* CACI 2704. Since this is Plaintiff's burden, without proof of these elements her claim must fail.

Regarding Plaintiff's daily rate, Plaintiff solely offered testimony that her "daily rate" was $3,000.00. Plaintiff's claimed $3,000.00 "daily rate" is directly contradicted by the plain language of the booking confirmation. The booking confirmation, admitted into evidence as Trial Exhibit 15, clearly and unambiguously

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

states Plaintiff's rate is "$2,500 /day + 20%." *See* Ellis Declaration at ¶4. Plaintiff described in her testimony that the "20%" was not paid to her, but was the fee charged and received by Plaintiff's modeling agency. Dissected further, if Plaintiff's modeling agency were to receive payment on Plaintiff's behalf, Plaintiff would not receive that "extra" twenty percent. Therefore, this is not a question for a jury, but even if presented to the jury as the finder of fact, no reasonable jury could find that Plaintiff's daily rate is greater than $2,500.00.

Moreover, booking confirmation states that "this confirms the above rate covers both the fee for models appearance at the job and fee for models release to use his/her likeness for all appropriate purposes." *See* Ellis Declaration at ¶4. Thus, the booking confirmation contradicts the testimony and does not distinguish which part of the rate includes the usage fee, which would not be wages. There is no evidence of how this rate was split, but clearly the whole amount of $3,000.00 could not be for wages.

Regarding Plaintiff's date of discharge, Plaintiff's claim is that her date of discharge was October 5, 2018. Plaintiff's position is yet again contradicted by the documentary evidence. First is the booking confirmation. As discussed above, the booking confirmation was signed by Ryan (without authority) and not until October 12, 2018. *See* Ellis Declaration at ¶4. The booking confirmation also contains conditions, specifically that Plaintiff's work is conditioned upon, or in other words "not complete until" a proper release is signed. *Id.* The release itself was not signed until October 15, 2018 and was signed by Plaintiff's agent (not by Plaintiff herself). *See* Trial Exhibit 7, Ellis Declaration at ¶3. Plaintiff cannot be said to have completed work until she properly followed the conditions thereof, which finally occurred on October 15, 2018. Plaintiff failed to prove her date of discharge, and no reasonable jury could find that Plaintiff's date of discharge was October 5, 2018 given the conditions of her performance were not yet complete on that date.

/ / /

## IV.   CONCLUSION

Plaintiff cannot establish many of the required elements of her sole claim against Ignite under Labor Code §203 for late payment of wages including: (a) which entity she allegedly worked for; (b) that Ignite acted willfully; (c) her daily rate; and (d) her date of discharge

The evidence as presented is clear that Ignite believed Plaintiff was performing modeling services for the October 2018 photoshoot as an independent contractor. Applicable statutory law and case law support that even if Ignite's understanding of Plaintiff's classification was not correct, that Ignite acted under that belief in good faith and never willfully or intentionally delayed payment to Plaintiff. The evidence supports and confirms Ignite's lack of willfulness and good faith conduct. Plaintiff failed to offer any evidence that Ignite acted otherwise. As a matter of law, this Court must enter judgment in favor of Ignite pursuant to Federal Rule of Civil Procedure 50(a).

Respectfully submitted,

Dated: April 19, 2021             **RYAN ELLIS LAW CORPORATION**

                                  _/s/ Ryan Ellis_
                                  RYAN ELLIS, ESQ.
                                  _Attorneys for Defendant Ignite International, Ltd._

IGNITE INTERNATIONAL, LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on the 19th day of April 2022, I electronically served a

3  copy of the foregoing **IGNITE INTERNATIONAL, LTD.'S MOTION FOR**

4  **JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL** in the above-

5  entitled matter as follows:

6

7  Roger Y. Muse, Esq.
   Excelsior Law

8  9595 Wilshire Blvd., Suite 900
   Beverly Hills, CA 90212

9  Roger@excelsior-law.com

10 *Attorneys for Plaintiff*

11 Jordanna G Thigpen, Esq.
   Thigpen Legal, P.C.

12 9595 Wilshire Blvd., Suite 961

13 Beverly Hills, CA 90212

14 jt@thigpenlegal.com
   *Attorneys for Plaintiff*

15

16

17

18                              _____*/s/ Ryan A. Ellis*_____

19                              An employee of Ryan Ellis Law
                                Corporation

20

21

22

23

24

25

26

27

28